IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH - CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>OMAR SIERRA,<br><br>Defendant. | **MEMORANDUM OPINION AND ORDER**<br><br>Judge Dee V. Benson<br><br>Case No.: 2:07-CR-93 |

    This motion arises out of the alleged improper identification of Defendant Omar Sierra by a confidential source through a photo array. Defendant argues that because the photo array was impermissibly suggestive and the confidential source unreliable, the identification should be suppressed from the evidence in this case.

**Factual Background**

    On January 11, 2007, officers from the West Jordan City Police Department (the "Police") contacted a female individual who was in possession of methamphetamine. Rather than arrest this individual, the Police engaged her to work with them as a confidential source to further a drug investigation involving Juan Sierra-Anguiano and Defendant Omar Sierra. The Confidential Source identified for the Police the address of 4182 West Zodiac Drive as the place where she had previously purchased methamphetamine a couple times a week for several months from a man she knew only as "Choforo."

Pursuant to this and other information, the Police executed a search warrant at 4182 West Zodiac Drive on the evening of January 11, 2007.  Upon entering the residence, Police arrested an individual identified as Juan Sierra-Anguiano.  Methamphetamine, cocaine, and a firearm were then located inside the residence.  Also located inside the residence was a driver's license bearing the name and photograph of Omar Sierra, and the address of 4182 West Zodiac Drive.

On January 22, 2007, DEA Agent Robert Marsee and Task Force Officer David Kwant met with the Confidential Source at the West Jordan City Police Department to gather more information concerning the investigation.  The officers asked the Confidential Source where the name Choforo came from.  The Confidential Source explained that Choforo was the name of the man whom she had contacted several times a week over the past several months to purchase drugs.  The Confidential Source stated that she would meet with Choforo at the Zodiac Drive residence, face-to-face, to purchase methamphetamine.

When asked to give a physical description of Choforo, the Confidential Source explained that he was approximately twenty-five years old, stood five feet eight inches tall, weighed about 150 pounds, and had light brown hair.  The Confidential Source also stated that Choforo had a younger brother whom she sometimes dealt with who was approximately nineteen years old.  She did not know his name.

After asking the Confidential Source these and other questions about Choforo and his younger brother, the officers told the Confidential Source that they were going to see if she could identify some photographs that may or may not contain Choforo's younger brother.  The Confidential Source was then presented with an eight-person photo array, which contained both the driver's license photo of Omar Sierra and a photo of Juan Sierra-Anguiano.  From this eight-

person photo array, the Confidential Source identified the photograph of Juan Sierra-Anguiano as Choforo's younger brother.

Following her correct identification of Juan Sierra-Anguiano, the Confidential Source was then asked if she could identify Choforo from a photograph. She indicated that she could. The Confidential Source was then presented with three driver's license photos, one of which was Defendant Omar Sierra. From these three photos, the Confidential Source identified Defendant Omar Sierra as Choforo. The Confidential Source was then immediately presented with the eight-person photo array, which contained the same driver's license photo of Omar Sierra that the Confidential Source had just identified. She again identified Omar Sierra as Choforo.

## Analysis

The primary evil to be avoided in evaluating an out-of-court identification of a criminal suspect is a substantial likelihood of misidentification. *Neil v. Biggers*, 409 U.S. 188, 198 (1972). "When the constitutionality of a photo array is challenged, the due process clause requires a two-pronged inquiry: first, the court must determine whether the photo array was impermissibly suggestive, and if it is found to be so, then the court must decide whether the identifications were nevertheless reliable in view of the totality of the circumstances." *United States v. Sanchez*, 24 F.3d 1259, 1261-62 (10th Cir. 1994).

**I.    Impermissibly Suggestive Procedure**

In determining whether a photo array was impermissibly suggestive, courts use a number of factors, "including the size of the array, the manner of its presentation by the officers, and the details of the photographs themselves." *Id*. at 1262; *see also United States v. Rosa*, 11 F.3d 315, 330 (2d Cir. 1993). In the present case, only three photos were shown to the Confidential Source

when she was asked to identify Defendant Omar Sierra for the first time. "The lower the number of photographs used by officers in a photo array, the closer the array must be scrutinized for suggestive irregularities." *Sanchez*, 24 F.3d at 1263. Accordingly, the Court will examine the procedure employed by the officers presenting the photo array carefully.

The DEA's Photo Identification Procedure provides that when conducting a photo array, a minimum of eight photos must be used. Additionally, all photos should be of identified persons of similar physical make-up, sex, hair, race, age, weight or build, etc. An admonition that the group of photos may or may not contain a picture of the person being investigated should be read to each witness.[1] And the procedure utilized should be recorded in a Report of Investigation including all persons present during the viewing, sources of the photos, and witness comments. The Report should also contain all photos and/or initialed photocopies used in the photo array.

As explained previously, the initial photo array only contained three photographs. It is unknown whether these three photographs were of persons with similar physical characteristics, because the other two photographs were not preserved. Neither is it clear if any admonition was given to the Confidential Source before identifying Defendant Omar Sierra, because no Report

---

[1]The entire admonition provides:
In a moment I am going to show you a group of photographs. This gourp of photographs may or may not contain a picture of the person being investigated. Keep in mind that hair styles, beards and mustaches may be easily changed. Also, photographs may not always depict the true complexion of a person – it may be lighter or darker than shown in the photo. Pay no attention to any markings or numbers that may appear on the photos or any other differences in the type or style of the photographs. When you have looked at all the photos, tell me whether you see any person known to you. Do not tell other witnesses that you have or have not identified anyone.

of Investigation was made. Furthermore, before obtaining the Confidential Source's identification, the Officers repeatedly focused her attention on Omar Sierra. The questions asked to the Confidential Source centered entirely on Defendant Omar Sierra and his younger brother. *See United States v. Field*, 625 F.2d 862, 867 (9th Cir. 1980). "[S]uch coaching has long been recognized by the courts as an important factor in determining whether a pre-trial line-up procedure was impermissibly suggestive." *Grubbs v. Hannigan*, 982 F.2d 1483, 1490 (10th Cir. 1993).

The failure to follow DEA protocol in conducting the photo array, the suggestive presentation of the photo array to the Confidential Source, and the almost inherently suggestive nature of such a small line-up, all evidence a photo array that was unnecessarily suggestive. The Officer's subsequent display of the eight-person photo array cannot cure these deficiencies. Accordingly, the Court finds that the photo array used to identify Defendant Omar Sierra was impermissibly suggestive.

## II.     Reliability of the Identifications

Having found that the pre-trial identification procedure was impermissibly suggestive, the Court must now look to the totality of the circumstances to determine if the identification of the Defendant was nevertheless reliable, and thus should properly go to the jury. *See Neil v. Biggers*, 409 U.S. 188, 199-200 (1972). The United States Supreme Court has articulated a five-factor test for evaluating the reliability of a pre-trial identification. *Id*. These factors are:

> [1] the opportunity of the witness to view the criminal at the time of the crime, [2] the witness' degree of attention, [3] the accuracy of [her] prior description of the criminal, [4] the level of certainty demonstrated by the witness at the confrontation, and [5] the length of time between the crime and the confrontation.

*Neil v. Biggers*, 409 U.S. at 199-200.

The facts in this case do not present the typical *Neil v. Biggers* analysis.  Most pre-trial identification cases involve a victim or witness identifying a defendant after a brief sighting or one-time confrontation.  *See, e.g., Id.*; *Grubbs v. Hannigan*, 982 F.2d at 1484-85 (involving rape victims identifying their assailant).  In contrast, this case deals with the pre-trial identification of a defendant by a witness who dealt with the Defendant for prolonged periods of time on a number of different occasions.

The Confidential Source purchased drugs from the Defendant, face-to-face, a couple of times a week for several months.  The witness had a substantial opportunity to view the Defendant, and repeatedly focused her attention on the Defendant and his features.  Accordingly, the witness was confident in her identification of the Defendant, and the risk of misidentification was slight.  Therefore, "under the totality of the circumstances the identification was reliable" and should be admitted into evidence.  *Biggers*, 409 U.S. at 199.

The Defendant argues, however, that the Confidential Source's prior physical description of Defendant, before identifying him in the photo array, was inconsistent with the Defendant's appearance and information on his driver's license.  Therefore, Defendant alleges that the second and third factors of *Neil v. Biggers* have not been satisfied and the identification should be suppressed.  As stated above, the Confidential Source described Defendant as twenty-five years old, five feet eight inches tall, 150 pounds, with light brown hair.  The description on Defendant's driver's license, however, described Defendant as twenty-seven years old, five feet nine inches tall, 170 pounds, with black hair.  Defendant argues that the twenty pound discrepancy and incorrect hair color are cause for concern as it pertains to the Confidential

Source's degree of attention – the second factor – and the accuracy of the witness' prior description – the third factor.

But the differences that Defendant cites are negligible. With regard to weight, the appearance of a 170 pound man as compared to a 150 pound man is often insignificant. Additionally, weight can fluctuate considerably. Similarly, hair color may be easily changed. Therefore, these slight differences in the Confidential Sources prior description to the Defendant's appearance on his driver's license do not support a finding that the Confidential Source is unreliable. To the contrary, the degree of accuracy in the Confidential Source's description with regard to Defendant's height, age, and weight supports the Court's finding of reliability.

Ignoring the reliability factors articulated in *Neil v. Biggers*, Defendant next argues that the photo identification should be suppressed because the Confidential Source is an unreliable witness that cannot be trusted. The Confidential Source was a drug user who could have also been charged with a crime. There is no evidence in the record regarding what kind of deal the Confidential Source received, or regarding any other motive the Confidential Source may have for "falsely" identifying the Defendant. Therefore, the Defendant contends that the Confidential Source cannot be trusted and her pre-trial identification should be suppressed.

In essence, the Defendant is arguing that the identification should be suppressed not because of a potential misidentification – which *Neil v. Biggers* is designed to prevent – but because of an alleged false identification. When someone is motivated to frame another through a false identification, they will do so regardless of the whether the identification procedure is accurately performed. Therefore, in those cases, the question of the witness' credibility is

properly given to the jury and must be weighed against corroborating evidence.

In the present motion, the Court is relying on the pre-trial identification of an undisclosed confidential source. The Court must make a reliability determination, therefore, by determining whether the information provided by the Confidential Source is corroborated by independent evidence. *See, e.g.*, *United States v. Artez*, 389 F.3d 1106, 1111 (10th Cir. 2004) (finding probable cause to search when police observed that several consecutive visitors to a residence stayed only for a short period of time, which corroborated an informant's tip that drug transactions were occurring). In this case, the Confidential Source provided the police with an address where she had obtained methamphetamine on several occasions. When this location was searched, the Police located drugs and a firearm. The Confidential Source told Police that in purchasing drugs, she primarily dealt with a man she knew as Choforo but also sometimes dealt with Choforo's younger brother. When Police searched the residence identified by the Confidential Source, the younger brother of the Defendant – who the Confidential Source subsequently accurately identified from an eight-person photo array – was arrested. Additionally, the Confidential Source provided Police with a physical description of Defendant that closely matched his physical appearance, before ever being presented with the suggestive three-photo array of Defendant.

The information provided by the Confidential Source was substantially corroborated by independent evidence. The Court finds, therefore, that the pre-trial identification by the Confidential Source is sufficiently reliable to go to the jury, which can make the ultimate determination of the Confidential Source's credibility.

### III.    Suppression Under *Brady v. Maryland*

Defendant's final argument is that because the Police failed to preserve the three-person photo array, the pre-trial identification should be suppressed under *Brady v. Maryland*, 373 U.S. 83 (1963). *Brady* held that when evidence favorable to an accused is withheld by the prosecution, "irrespective of the good faith or bad faith of the prosecution," this constitutes a violation of due process and the evidence should be suppressed. *Id*. at 87. But having found that the pre-trial identification was reliable, this argument fails.

The evidence at issue, namely, the three-person photo array, is not favorable to Defendant. No matter how dissimilar the other two persons contained in the photo array were from Defendant, the Court has found that the Confidential Source's repeated contacts with Defendant makes her identification reliable enough to send to a jury. Therefore, the Court finds that the Police's failure to preserve these photos did not result in prejudice to Defendant. No matter how impermissibly suggestive the procedure of the photo array may have been, relying on the factors articulated in *Neil v. Biggers*, the likelihood of a misidentification by the Confidential Source in this case is minimal.

## Conclusion

For the foregoing reasons, the Court finds that under the totality of the circumstances the pre-trial identification of the Defendant by the Confidential Source was reliable. Accordingly, Defendant's motion to suppress is DENIED.

**IT IS SO ORDERED.**

DATED this 14th day of April, 2008.

_____
Dee Benson
United States District Judge